COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPREME JUDICIAL COURT
                                                FOR SUFFOLK COUNTY
                                                NO. BD-2016-118

IN RE: DAVID B. STEIN

MEMORANDUM OF DECISION

This matter came before me on an information and petition for discipline by bar counsel, and a vote of the Board of Bar Overseers (board), recommending that the respondent be disbarred from the practice of law in the Commonwealth, for eight counts of repeated and long standing misconduct involving eight separate clients. See S.J.C. Rule 4:01, § 8(3). Based on the record of the proceedings and the vote of the board, and with due consideration of the respondent's failure to participate in the proceedings in this court, I conclude that disbarment is the appropriate sanction for the respondent's repeated misconduct.

Prior proceedings. The respondent was admitted to the practice of law in the Commonwealth in December, 1990, and practiced law for twenty-five years without any assertions of misconduct. At all times relevant to the misconduct at issue here, the respondent was an equity partner in an Andover law firm with approximately eighteen attorneys. Bar counsel filed a

seven-count petition for discipline against the respondent in October, 2015; during the course of the disciplinary proceedings, a hearing committee of the board allowed bar counsel's motion to amend the petition to add an eighth count. For most of the disciplinary process, the respondent participated in the proceedings to some extent. He filed an answer to bar counsel's petition, was deposed and submitted documents, and filed numerous motions for continuances. He appeared in person on the first day of an evidentiary hearing before the hearing committee, where he requested a continuance due to illness.

The committee allowed a brief continuance, but thereafter denied the respondent's motions (by electronic mail message) for further continuances on the ground of illness, after one of bar counsel's investigators learned that the doctor's note which the respondent submitted to the committee had been obtained from the doctor under false pretenses, purportedly for use in receiving a refund for an airline ticket, and that the respondent had not actually sought medical treatment on the date in question. The committee warned the respondent that it would conduct the hearing without him if he failed to appear on the next scheduled date; when the respondent did not appear as scheduled, the hearing was conducted in his absence. The board thereafter allowed the respondent's motion to file proposed findings of fact and rulings of law, and also allowed a motion for extension of time, but the respondent did not file any proposed findings. Over objection by

bar counsel, the The respondent also has not filed any response to the information in this court, and, although given proper notice, did not appear before me at a hearing on December 22, 2016 attended by bar counsel.

Misconduct. Little would be gained by belaboring at length the history of the respondent's repeated misconduct, over the course of several years, with respect to eight of his clients. This misconduct is set forth in detail in the hearing committee's report, written after testimony by eleven witnesses, including two of the respondent's former partners, his clients, and bar counsel's investigator; the respondent's appearance on the first day of the hearing and his recorded deposition; and the introduction of hundreds of exhibits. At a number of points in his deposition, the respondent declined to answer a question on Fifth Amendment grounds; at other times, he admitted to misuse of client funds, but declined to answer further, By failing to appear at the evidentiary hearing, and failing to submit the proposed findings of fact that the committee allowed him to file, the respondent waived all right to challenge the evidence or to introduce any of his own evidence.

Over bar counsel's objection, the committee took notice of the respondent's written proffer of mitigation, although, as the committee noted, the vague statement of marital and family issues during a particular period of a few weeks, which the respondent had discussed with bar counsel earlier in the proceedings, offers

nothing that would mitigate the respondent's deliberate, intentional, and repeated misconduct over a period of several years prior to the announced divorce proceedings.

In sum, the respondent engaged in a course of misuse of client funds for his own purposes, causing money that he had deposited in the firm's IOLTA account on behalf of his clients to be used to pay the firm's expenses, other clients' expenses, or settlement payments due other clients, while keeping remaining funds for his own use. In some cases, the respondent misrepresented to clients that portions of their settlement moneys had been used to pay medical liens that had not been paid, or inflated the amount of the lien, keeping the funds for the purported liens in the firm's IOLTA account and then using the funds for other purposes. In a number of instances, the respondent used funds due one client to pay the firm's filing fees for other clients' matters. In one matter, the respondent misrepresented to a client that he had reached a settlement in her case, and had her sign a release for $30,000, although no settlement had been reached and the matter had been dismissed, without the parties' knowledge, on the respondent's false representation to the court that the parties had reached a settlement. The respondent thereafter used $6,700 of another client's funds to make a purported partial payment to the client, falsely told her that part of the money had been paid for a medical lien, and then engaged in a series of misrepresentations

to the client about when she would receive the remaining $10,000 that she believed, based on the respondent's false statements, was due to her. The respondent falsely had recorded in the firm's records that the $6,700 taken from the other client's IOLTA funds was to pay a physical therapist to treat that client. The respondent has not made restitution of these funds.

The respondent also engaged in a pattern of drafting false documents to be filed with a court. In one matter, he created a number of documents purporting to advance discovery in the case, and showed them over a series of months to a client who had questioned what was being done in his case and why the matter was moving so slowly, claiming that the documents had been filed with the court, when in fact the respondent made no filings in that particular matter for more than eighteen months.

The respondent exhibited a pattern of repeated oral and written misrepresentations to multiple clients, on many different topics, including the status of their cases, the work that had been done in their cases, and the reasons why payments they expected had not been received or when they would be delivered. On one notable occasion, where the respondent was scheduled to meet with a managing partner, a client who had complained about the inability to receive her (nonexistant) settlement payment, and another of the firm's partners, the client was sitting with the managing partner at the firm's offices, awaiting the

respondent, when he sent a false text message to the client claiming that the managing partner had cancelled the meeting.

On a number of occasions, the respondent failed to timely file documents in a client's matter, including even failure to file an initial complaint, causing the matters to become time-barred, or dismissed for lack of a necessary response. In one case where a matter was dismissed because the respondent failed to complete service of the complaint, he falsely told the clients that their matter was ongoing, and then that he had negotiated a settlement. Thereafter, in response to multiple requests from the clients for their funds, by text message and electronic mail message, the informed them that the defendant in the case had yet to forward the funds, and that the clients could obtain the (nonexistent) settlement funds by filing further actions with the court.

Bar counsel asserts, and the board found, that the respondent's actions violated Mass. R. Prof. C. 1.1 (competence); Mass. R. Prof. C. 1.2(a) (duty to seek client's objectives); Mass. R. Prof. C. 1.3 (duty to act with reasonable diligence and promptness); and 1.4(a) (duty to keep client informed); Mass. R. Prof. C. 1.14(a) and (b) (duty with respect to representation of client with diminished capacity; Mass. R. Prof. C. 1.15(b), (c), and (d) (safekeeping of client funds); Mass. R. Prof. C. 1.16(d) (failing to return the unearned portion of the fee after his discharge); Mass. R. Prof. C. 8.4(c) (dishonesty, fraud, deceit,

or misrepresentation); and Mass. R. Prof. C. 8.4(h) (engage in any other conduct that adversely reflects on his or her fitness to practice law). The record of the respondent's multi-faceted and lengthy misconduct fully supports the board's conclusion.

Appropriate sanction. In deciding the appropriate sanction to impose, the primary consideration "is the effect upon, and perception of, the public and the bar." Matter of Crossen, 450 Mass. 533, 573 (2008), quoting Matter of Finnerty, 418 Mass. 831, 829 (1994). See Matter of Alter, 389 Mass. 153, 156 (1983). The sanction should serve both to deter other attorneys from the same type of conduct and to protect the public. See Matter of Foley, 439 Mass. 324, 333 (2003), citing Matter of Concemi, 422 Mass. 326, 329 (1996). In addition, while the sanction imposed should not be "markedly disparate" from sanctions imposed on other attorneys for similar misconduct, each case should be decided on its own merits, and the attorney should receive "the disposition most appropriate in the circumstances." See Matter of Pudlo, 460 Mass. 400, 405-407 (2011). In the circumstances here, I have no difficulty in concluding that disbarment is both appropriate and necessary.

The presumptive sanction for the intentional misuse of client funds in IOLTA accout, with deprivation and without restitution, for any one of the respondent's multiple instances of misuse, is disbarment. See Matter of Sharif, 459 Mass. 558, 565 (2011); Matter of Schoepfer, 426 Mass. 183, 186 (1997). The

presumptive sanction for misrepresentation to a court under oath is a two-year suspension. See Matter of Balliro, 453 Mass. 75, 86 (2009), quoting Matter of O'Donnell, 23 Mass. Att'y Discipline Rep. 508, 514 n.3 (2007). And, setting aside any of his other misconduct, the respondent engaged in repeated and longstanding misconduct of both types. See Matter of Saab, 406 Mass. 315, 326-327 (1989) (repeated misconduct over period of years). I agree also with the board that the respondent's failure to participate fully in the disciplinary proceedings, and his apparent lack of any understanding or remorse for his misconduct gravity of the respondent's repeated misconduct, are factors in aggravation, see Matter of McCarthy, 23 Mass. Att'y Disc. R. 469, 470 (2007), and the respondent's vaguely asserted marital problems, even if taken into consideration at face value, do not offer any reason for mitigation. See Matter of Finn, 433 Mass. 418, 425 (2001) and cases cited ("typical mitigating factor that does not warrant a reduction in his sanction"). A respondent bears a heavy burden to offer "clear and convincing reasons" for departing from the presumptive sanction of disbarment for intentional misuse of client funds, with deprivation and without restitution; absent such reasons, a reviewing court will not depart from this sanction. See Matter of Sharif, supra at 566-567; Matter of Schoepfer, supra.

In these circumstances, disbarment is "the disposition most appropriate," and no lesser sanction would serve to protect both

the public and public faith in the legal system. See Matter of Pudlo, 460 Mass. at 404, quoting Matter of Crossen, 450 Mass. at 573; Crossen, supra at 574 ("Cumulative and wide-ranging misconduct"). The respondent repeatedly falsified that he had undertaken to pursue his clients' interests, while failing to make minimal efforts to pursue their matters, lied about court filings and negotiated settlements that never happened, lied to the court about his clients' and opposing counsel's actions, and kept significant portions of the money that he had taken to represent the clients he was deceiving. That he previously had practiced successfully for more than two decades as a civil litigator and equity partner in a law firm in no way reduces the later, deliberate, and wide-ranging harm he caused, or the fact that he duped unwitting support staff at his firm into assisting in his schemes. See Matter of Finneran, 455 Mass. 722 (2010), quoting Matter of Driscoll, 447 Mass. 678, 688 (2006) ("respondent's long and distinguished career of public service and his many pro bono services" "do not generally qualify as the types of special mitigating circumstances . . . that we have pointed to as reasons for not applying a presumptive level of disciplinary sanction"). "Without the public's trust that lawyers and judges act in good faith and strictly within the bounds of our laws and professional norms, the rule of law has little practical force. The record amply demonstrates that [the respondent] violated the most basic ethical precepts of his

profession and, in so doing, has harmed both the legal profession and the public's perception of our justice system." Matter of Curry, 450 Mass. 503, 521 (2008).

Accordingly, a judgment shall enter disbarring the respondent from the practice of law in the Commonwealth.

By the Court,

Frank M. Gaziano
Associate Justice

Entered:   January 27, 2017

1/30/17